**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD A. BROUGH, JR.,**
                              **Plaintiff,**

**-vs-**                                                    **Case No.:  6:00-cv-647-Orl-19KRS**

**IMPERIAL STERLING LTD,**
                              **Defendant.**
_____

# ORDER

This case comes before the Court on the following:

1.      Plaintiff Richard A. Brough, Jr.'s Renewed Motion for Attorneys' Fees and Costs.[1]

        (Doc. No. 272, filed on November 12, 2002);

2.      Plaintiff Richard A. Brough, Jr.'s Memorandum of Law in Support of Motion for

        Attorneys' Fees and Costs.  (Doc. No. 273, filed on November 12, 2002);

3.      Notice of Filing an Additional Copy of the Expert Affidavit of James H. Fallace.  (Doc.

        No. 274, filed on November 12, 2002);

4.      Renewed Affidavit on Plaintiff's Motion for Attorneys' Fees and Costs.  (Doc. No. 275,

        filed on November 12, 2002);

5.      Defendant Imperial Sterling Limited's Response to Plaintiff's Motion for Attorneys'

        Fees and Costs.  (Doc. No. 282, filed on December 16, 2002);

6.      Affidavit of Bridget Ann Berry.  (Doc. No. 285, filed on December 20, 2002);

---

[1] Plaintiff's Renewed Motion for Attorneys' Fees and Costs (Doc. No. 272) was terminated in error by the docketing clerk and thus eliminated from the Court's reports of pending motions.  This error was not discovered until recently.

7.      Order.  (Doc. No. 293, filed on November 7, 2003);

8.      Certificate of Compliance by Plaintiff Richard A. Brough, Jr. and Defendant Imperial

Sterling Limited Re: Order at Docket Number 293.  (Doc. No. 299, filed on November

28, 2003);

9.      Report and Recommendation of the United States Magistrate Judge on Plaintiff Richard

A. Brough, Jr.'s Renewed Motion for Attorneys' Fees.  (Doc. No. 308, filed on May 14,

2004);

10.     Defendant Imperial Sterling Limited's Objections to the Magistrate Judge's Report and

Recommendation on Plaintiff's Renewed Motion for Attorneys' Fees.  (Doc. No. 309,

filed on May 21, 2004);

11.     Plaintiff Richard A. Brough, Jr.'s Response to Defendant Imperial Sterling Limited's

Objections to the Magistrate Judge's Report and Recommendation on Plaintiff's

Renewed Motion for Attorneys' Fees.  (Doc. No. 310, filed on June 1, 2004);

12.     Defendant Imperial Sterling Limited's Response to Plaintiff's Untimely Objection to

Report and Recommendation.  (Doc. No. 311, filed on June 4, 2004);

13.     Notice by Plaintiff Richard A. Brough, Jr. of Filing the Affidavit of William H.

Cantwell, II in response to the Court's October 14, 2004 Order.  (Doc. No. 319, filed on

October 25, 2004);

14.     Response by Richard A. Brough, Jr. to Objection of Imperial Sterling to Magistrate

Judge's Report and Recommendation on Costs.  (Doc. No. 316, filed on June 28, 2004);

and

15.     Order re: Docket Number 316 filed by Plaintiff Richard A. Brough, Jr.  (Doc. No. 318,

filed on October 14, 2004).

## Background

After the resolution of the appeal in this case, Plaintiff Richard A. Brough, Jr. filed a Renewed Motion for Attorneys' Fees and Costs. (Doc. No. 272, filed on November 12, 2002). Plaintiff sought fees for the work of his attorneys before the Court and before the Court of Appeals.[2] (*Id.*) Plaintiff submitted the affidavit of James Fallace in support of his Motion for Attorneys' Fees. (Doc. No. 274, filed on November 12, 2002). Fallace opined that the total reasonable fee for all services rendered by William H. Cantwell, II and Michael Riemenschneider is $233,139. (*Id.* at ¶ 8).

Plaintiff's counsel, Michael Riemenschneider, filed a renewed affidavit on the attorneys' fees issue. (Doc. No. 275, filed on November 12, 2002). In the affidavit, Riemenschneider deducted $11,548.10 in credits from the $263,596.30 litigation fee total for an attorneys' fees total of $252,048.20. (*Id.* at 1). For the appeal, Riemenschneider's affidavit noted that attorneys' fees came to $40,809, and Riemenschneider deducted a $380 credit for a fee total of $40,429. (*Id.* at 2). Total attorneys' fees for the litigation and appeal amounted to $292,477.20. (*Id.*) Riemenschneider's affidavit also includes a section called "deductions" based on the decision of the Eleventh Circuit Court of Appeals. (*Id.*) Based on such decision, Riemenschneider stated in his affidavit that he had deducted $7,554.50 related to pretrial issues, $2,000 related to trial issues, $2,659.13 related to post trial issues, and $13,026 related to appellate issues to comport with the Eleventh Circuit's ruling. (*Id.*) Reimenschneider also deducted $1,501 in fees unrelated to the decision of the appellate court. (*Id.*) The total deductions amounted to $28,080.63. (*Id.*) After all deductions, the grand total in attorneys'

---

[2] The Eleventh Circuit determined that Plaintiff was entitled to appellate attorneys' fees incurred in successfully defending the $406,000 award for the unpaid commission. (Doc. No. 287, filed on April 4, 2003, Ex. A).

fees amounted to $264,396.57.  (*Id.*)

Defendant Imperial Sterling Ltd. responded to Plaintiff's motion  (Doc. No. 282, filed on December 16, 2002), supported by the affidavit of Attorney Bridget Ann Berry.  (Doc. No. 285, filed on December 20, 2002).  Berry opined based on her review of the file and her discussions with Defendant's attorneys that $58,770 is the reasonable attorneys' fees for work before this Court and the Court of Appeals.  (*Id.* at ¶15).

The Magistrate Judge issued a report and recommendation on the issue of entitlement to attorneys' fees (Doc. No. 288, filed on May 30, 2003), which was adopted with modification by the Court.  (Doc. No. 290, filed on September 26, 2003).

Thereafter, the Court ordered counsel to confer again in a good faith effort to resolve the remaining attorneys' fees issues.  (Doc. No. 288, p. 6) (Doc. No. 290, p.4).  With respect to the issues that could not be resolved, the Magistrate Judge ordered counsel to jointly file a chart with the Court setting forth with specificity the contested issues.  (Doc. No. 293, filed on November 7, 2003, p.2).  In her Order, the Magistrate Judge noted that Defendant had not adequately identified specific hours worked by attorneys to which it objects.  (*Id.* at 1).  The Magistrate Judge explained that generalized statements that the time spent was unreasonable or unnecessary were not particularly helpful and not entitled to much weight.  (*Id.*)  The Magistrate Judge indicated the specifics of the contested hours should be provided before she could address the amount of attorneys' fees to be awarded.  (*Id.*)

Counsel jointly filed a 175 page chart divided into many sections and subsections.  (Doc. No. 299 filed November 28, 2003).  In the chart, counsel indicated that they agreed that $62,682.80 in attorneys' fees for work before the Court is awardable.  (Doc. No. 299, "Chart," pp. 140, 160).  The disputed attorneys' fees for work before the Court amount to $179,746.40.  (*Id.* at 140).  The parties

-4-

also agreed that $85.00 in attorneys' fees before the Eleventh Circuit is awardable, but $22,978 is in dispute.  (*Id.* at 154).

The Magistrate Judge issued a Report and Recommendation on the attorneys' fees issue, noting that a number of objections could not be resolved by recommending that specific hours be reduced due to block billing, vague descriptions of time worked, and overly broad objections.  ( Doc. No. 308 at 8 filed May 14, 2004).  The Magistrate Judge found that the lack of specificity in the time entries, the utilization by Plaintiff's counsel of an improper minimum billing unit, and Plaintiff's failure to sustain his burden of proving that he deleted from his fee request time spent solely on the issue of future commissions necessitated an across the board cut of fifteen percent, with the resulting total trial court litigation fees amounting to $152,784.44.  (*Id.* at 10-12).  The Magistrate Judge also found that an appellate attorneys' fees award of $23,063.00 was appropriate and recommended a total attorneys' fee award of $238,530.24.  (*Id.* at 13-14).

Defendant filed Objections to the Magistrate Judge's Report and Recommendation.  (Doc. No. 309 filed May 21, 2004 ).  Defendant objected to the Report and Recommendation nearly in its entirety, arguing that the Magistrate Judge essentially eliminated the burden of proof by awarding Plaintiff practically all of his requested fees.  (*Id.* at 1).

On June 1, 2004, Plaintiff filed a response to Defendant's Objections to the Report and Recommendation.  (Doc. No. 310).  On June 4, 2004, Defendant filed a brief entitled "Defendant's Response to Plaintiff's Untimely Objection to the Report and Recommendation," arguing that Plaintiff's June 1, 2004 filing was untimely because it was not made within 10 days of the Magistrate Judge's Report and Recommendation.  (Doc. No. 311).

The Magistrate Judge issued a Report and Recommendation that the Court award costs to be

paid by Defendant to Plaintiff in the amount of $11,190.01 (Doc. No. 313, p. 14 filed June 10, 2004). Defendant objected to the Magistrate Judge's Report and Recommendation.  (Doc. No. 314 filed June 25, 2004).

The Court reduced the amount of costs recommended by the Magistrate Judge in the Report and Recommendation by $133.55 and overruled Defendant's objections as to  $151.54 in UPS charges. (Doc. No. 318, p. 6 filed October 14, 2004).  However, the Court reserved ruling on $87.63 in "special copies" for the deposition of Clark Maxwell because it was unclear from the record whether "special copies" were extra copies of filed papers.  (*Id.* at 3).  The Court also reserved ruling as to $324.85 associated with the Scott Brenner deposition because the invoice did not itemize the cost of the first and second transcript.  (*Id.* at 5).  The Court gave Plaintiff ten days to file an affidavit certifying the cost of the first Scott Brenner deposition and certifying the meaning of the notation "special copies" on the Clark Maxwell deposition.  (*Id.* at 6).  The Court also gave Defendant ten days thereafter to respond.  (*Id.*)

On October 25, 2004, Plaintiff filed the affidavit of William Cantwell, II.  (Doc. No. 319, "Cantwell Affidavit").  Cantwell testified that Maxwell, in respect to a subpoena duces tecum, brought with him approximately two inches of documents for production which were not attached as exhibits. (*Id.* at ¶ 6).  At the request of both parties, copies were made by the court reporter, and these documents were used at the second deposition.  (*Id.*)  Cantwell averred that these documents included an appraisal of a 74.05 acre tract of land located in Brevard County, Florida which dealt with property that was the subject of the lawsuit.  (*Id.*)  Included in the appraisal were color photographs that needed to be reproduced.  (*Id.*)  Maxwell also brought colored maps and oversized blueprints with him.  (*Id.*) To reproduce these documents, King Reporting Services, Inc. charged the parties for "special copies"

in the amount of $87.63.  (*Id.*)

Cantwell also testified that the $324.85 cost associated with the Scott Brenner deposition was the cost for an original transcript alone.  (*Id.* at ¶ 4).  The procedure of the court reporting office is that a courtesy copy is always provided to each party who orders the original transcript.  (*Id.*)

Defendant did not respond to Cantwell's affidavit.

**Standard of Review**

Whenever a party files a timely and specific objection to a finding of fact by a Magistrate Judge, the District Court has an obligation to conduct a *de novo* review of the record with respect to that factual issue.  *Loconte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988); *see also* 28 U.S.C. § 636 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made").  As the use of the term *de novo* implies, the District Court's consideration of the factual issue must be independent and based on the record before the Court.  *LoConte*, 847 F.2d at 750.

*Analysis*

This Order analyzes Defendant's Objections to the Magistrate Judge's Report and Recommendation on Plaintiff's Renewed Motion for Attorneys' Fees and Plaintiff's affidavit filed in response to the Court's Order analyzing the Magistrate Judge's Report and Recommendation on Plaintiff's Renewed Motion for Costs.

<u>*Renewed Motion for Attorneys' Fees*</u>

*A.  Timeliness of Plaintiff's Response*

The Court will first address Defendant's argument that Plaintiff's June 1, 2004 filing (Doc. No. 310) titled "Plaintiff's Response to Defendant's Objections to the Report and Recommendation on

Plaintiff's Renewed Motion for Attorneys' Fees and Costs" was untimely filed. Defendant argues that the June 1, 2004 filing constitutes a written objection to the Magistrate Judge's Report and Recommendation which must be filed within ten days from the date that the Report and Recommendation was filed.[3]

On May 14, 2004, the Magistrate Judge issued her Report and Recommendation and stated that "[f]ailure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal." (Doc. No. 308, p. 14). While the Magistrate Judge signed her Report and Recommendation on May 14, 2004, the Order was not entered until May 17, 2004. Ten days after May 17, 2004, excluding intermediate Saturdays, Sundays, and legal holidays, including the Memorial Day holiday, is June 1, 2004. *See* FED. R. CIV. P. 6(a). Thus, Plaintiff's Objection was timely when it was filed on June 1, 2004.

### B. Objections to Report and Recommendation

Defendant's remaining Objections can be categorized into six arguments: 1) Plaintiff is not entitled to $3,200 of the fee because it is a credit; 2) the Magistrate Judge improperly shifted the burden of proof by cutting attorneys' fees by fifteen percent rather than individually examining each hour; 3) Plaintiff is not entitled to recover attorneys' fees spent determining the amount of fees; 4) the Magistrate Judge erred by awarding time for non-legal work; 5) Plaintiff failed to submit an affidavit in support of the reasonableness of fees on appeal; and 6) Plaintiff failed to meet his burden of proof on appellate attorneys' fees.

---

[3] While the docket sheet reflects that Docket No. 310 was filed on June 1, 2004, Cantwell certified in the document that he furnished a copy of the document to counsel for Defendant by facsimile and U.S. Mail on Friday, May 28, 2004. (Doc. No. 310, p. 14).

Plaintiff objects that the Magistrate Judge improperly reduced the attorneys' fees by fifteen percent and also argues that the Magistrate Judge failed to consider deductions made by Plaintiff's counsel when she completed an across the board reduction of fifteen percent.  (Doc. No. 310, pp. 8, 12).  Plaintiff contends that if the Magistrate Judge believed that a reduction was sufficient to deal with Defendant's objections, including entries related to the future commissions, then the deductions made by Plaintiff's counsel should have been added back into the equation prior to deducting fifteen percent. (*Id.*)

The Court will analyze each of these arguments in turn.

### 1. Defendant's Argument that $3,200 Must be Trimmed Because it is a Credit

Defendant claims that the Magistrate Judge erred by basing her Report and Recommendation on the false premise that the party seeking fees is Plaintiff's counsel, Michael Riemenschneider, as opposed to Plaintiff.  As a professional courtesy, which is reflected in Riemenschneider's affidavit, Riemenschneider gave Plaintiff credits totaling $11,548.10.  Defendant argues that for these "credits," with the exception of the $3,200 credit, all of the time entries to which the credits applied were specified on the Detail Fee Transaction File List attached to the affidavit.  After the Court determines the fee award, Defendant contends that the Court must deduct the $3,200 credit because Plaintiff cannot seek to recover in fees that which he was not charged and did not pay.

Plaintiff represents that the $3,200 credit was deducted as part of the $11,548.10 credit and that he is not seeking this $3,200 from Defendant.  (Doc. No. 310, p. 5).  Plaintiff stipulates that the $3,200 credit was reflected in the Detail Fee Transaction File List, but was not included in the amount sought by Plaintiff in the Renewed Affidavit for Attorneys' Fees.  (*Id.*)  Plaintiff argues that this amount should not be deducted again because it is already reflected as a deduction in Riemenschneider's

affidavit.

The Court has closely reviewed the Detail Fee Transaction File List. (Doc. No. 275, Ex. A). The list reflects a $525 credit on June 30, 2000, as a professional courtesy, an $885.60 credit on November 30, 2000, as a professional courtesy, an $807.50 credit on November 30, 2000, as a professional courtesy, a $3,825 credit on December 31, 2000, as a professional courtesy, a $3,200 credit on January 31, 2001, as a professional courtesy, a $1,105 credit on July 3, 2001, as a credit for work performed on April 29, 2001,  April 30, 2001, and May 10, 2001, and a $1,020 credit on July 31, 2001, as a professional courtesy. The total sum of these credits amounts to $11,368.10, although the affidavit reflects a credit of $11,548.10. It is clear from the Court's review of the Detail Fee Transaction File List that the $3,200 credit was included within the $11,548.10 total and that Plaintiff deducted the $3,200 credit from the amount of attorneys' fees sought in the renewed motion. Thus, Defendant's argument that the $3,200 credit was not reflected on the Detail Fee Transaction File List is not well taken.

Defendant contends that the $3,200 credit was not included in the chart. Defendant further argues that to reflect the credit on the Detail Fee Transaction File List only and not on the chart creates an error in Plaintiff's favor because the chart is independent of the Detail Fee Transaction File List and the Renewed Affidavit as to Attorneys' Fees.  In her Report and Recommendation, the Magistrate Judge stated that if Defendant's assertion is true, then its failure to include the $3,200 credit on the chart of disputed issues was nonsensical because it was Defendant's responsibility to make sure that this concession was taken into account before it created the chart. (Doc. No. 308, p. 8). The credit represented an agreement to withdraw a portion of the fee award based on the time entries, and the failure to include the $3,200 on the chart cannot result in an additional assessment against Plaintiff.

(*Id.*)

Defendant's objection is based on the assumption that the other credits applied to specific time entries and that these time entries were specified on the Detail Fee Transaction File List. This objection, however, is belied by the record.  The credits on June 30, 2000, November 30, 2000, December 31, 2000, and July 31, 2001 were general credits and did not specify time entries.  Only the July 3, 2001 credit specified certain time entries.  Even more importantly, Defendant did not raise objections to the June 30, 2000, November 30, 2000, December 31, 2000, or July 31, 2001 time entries either in its brief or in the chart.  If Defendant wished to contest the $3,200 credit on the basis that this credit did not specify specific time entries to which it was meant to apply, then Defendant should have contested the June 30, 2000, November 30, 2000, December 31, 2000, and July 31, 2001 time entries on this same basis.  Because there is no evidence in the record to support Defendant's contention that the total amount of fees sought in the chart did not include the $3,200 credit and because Defendant's objection is based on an incorrect assumption, the Court finds that Defendant's argument is without merit.

### 2. Defendant's Argument that the Magistrate Judge Improperly Shifted the Burden of Proof by Reducing Fees by Fifteen Percent Rather than Individually Examining Each Hour

Defendant argues that Plaintiff has been given numerous opportunities to present evidence and meet his burden of proof to demonstrate his entitlement to attorneys' fees.  Defendant claims that it lodged specific objections against the generalized hours that Plaintiff sought in the chart and that the Magistrate Judge improperly shifted the burden of proof by asserting that Defendant made sweeping and speculative objections throughout the chart rather than specific objections.  Defendant argues that Plaintiff bears the burden of demonstrating his entitlement to attorneys' fees by detailing the hours with the requisite specificity and Defendant cannot be faulted for lodging objections to Plaintiff's

-11-

generalized statements.  Defendant further takes issue with the Magistrate Judge's requirement of imposing specific objections to what Defendant contends are generalized statements and urges the Court to engage in an extensive analysis of dozens of objections that it raised regarding each time entry on the 175 page chart.

A request for attorneys' fees should not result in a second major litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Yet, in the instant case, the parties have submitted a 175 page chart on the attorneys' fees issue which contains objections and analysis of the hours expended by Plaintiff's counsel, a seventeen page billing statement, and affidavits from Bridget Berry, James Fallace, and Michael Riemenschneider.  The record before the Court is both extensive and voluminous.[4]

If litigants cannot settle the amount of a fee, the fee applicant bears the burden of establishing entitlement to an award and documenting hours expended.  *Id.*  The applicant should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.  *Id.*  A well-prepared fee petition would also group the time entries by the nature of the activity or stage of the case.  *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  Generalized objections that the petitioner spent an unreasonable amount of time are neither helpful nor entitled to much weight.  *Id.* at 1301.  If a document is inadequate, the Court is not relieved of its obligation to award a reasonable fee.  *Id.* at 1303.  However, the Court has the power to make an award without the need for further pleadings or an evidentiary hearing.[5]  *Id.*

_____

[4] Furthermore, the chart is single spaced and is on legal sized paper.  The presentation of the chart violates Local Rule 1.05(a) which requires that all documents be typewritten, double-spaced, and on paper eight and one-half inches by eleven inches long.

[5] Evidentiary hearings on the issue of fees are sometimes necessary.  *See, e.g., King v. McCord*, 621 F.2d 205, 206-207 (5th Cir. 1980) (it was an abuse of discretion to award fees

The essence of the dispute underlying the claim for attorneys' fees and costs is that Plaintiff claimed that two handwritten documents constituted a binding employment contract with Defendant. (Doc. No. 98, "Joint Pretrial Stipulation," pp. 1, 2).  In reliance on the agreement, Plaintiff began working for Defendant and its subsidiaries.  (*Id.*)  Plaintiff claimed that Defendant wrongfully repudiated the agreement for which Plaintiff sought $3,454,557.00 in damages.  (*Id.* at 17).  Defendant claimed that the handwritten documents that Plaintiff produced were fraudulent and part of a conspiracy between Plaintiff and Counter-Defendant Harriet Golding who is the mother of Jerrold Levy, the Vice-President of Defendant, and alternatively that Golding had no authority to enter such employment agreement.  (*Id.* at 2, 3).

Plaintiff filed a one count complaint.  Defendant filed a five count counterclaim, affirmative defenses, and joined Harriet Golding as a party to the lawsuit.

The jury found against Defendant and in favor of Plaintiff on his breach of contract claim, awarding him total damages of $3,199,560; $406,000 for lost commissions on one property that had been sold before trial, $2,585,000 in future commissions on other Florida properties that had not yet been sold, and $208,560 in lost salary, benefits, and vehicle allowance.  *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1176 (11th Cir. 2002).  The appellate court reversed part of the award, finding that the jury's award of $2,585,000 for future commissions on other Florida properties was based on speculation.  *Id.* at 1177.  The remainder of the jury's verdict was upheld in the amount of $614,560.

---

without holding an evidentiary hearing where a hearing was requested, there were disputed issues of fact, and there was an unclear written record).  Evidentiary hearings are not necessary every time the written pleadings present a dispute on a matter as to which the Court possesses expertise.  *Norman*, 836 F.2d at 1304.  Such matters may include the reasonableness of the fee and the reasonableness of the hours.  *Id.*  An evidentiary hearing may be required where there is a dispute of material historical fact such as whether a case could have been settled or whether there was duplication of work.  *Id.*  Because there is not a dispute of material historical fact in the instant case, the Court finds that an evidentiary hearing is not necessary.

*Id.* at 1182.

The litigation at the trial level involved numerous motions,[6] and a number of depositions were taken in this case.[7]  The record also reflects that several pretrial motions were made including motions in limine and motions to strike.[8]  An eight day jury trial was held in this case on June 11-13, and 18-22, 2001 (Doc. Nos. 180-193). The issues in this case were vehemently contested, and due to the familial relationship between Harriet Golding and Jerrold Levy, the case was particularly acrimonious and emotional.  In this context of the issues presented in the case, the Court reviews the attorneys' fees time entries.

Some billing descriptions on the chart are non-specific, but after reviewing each time entry on the Detail Fee Transaction File List, it cannot be said that the time expended on such tasks is unreasonable.[9]  Other billing descriptions demonstrate the complexity and variety of the issues

[6] These motions included, but were not limited to, Defendant's Motion to Strike Plaintiff's Affirmative Defenses (Doc. No. 38, filed on January 2, 2001), Plaintiff's Motion to Strike Defendant's Reply to Plaintiff's Affirmative Defenses to the Amended Counterclaim (Doc. No. 42, filed on January 8, 2001), Plaintiff's Motions for Summary Judgment (Doc. No. 47) (Doc. No. 49), and Plaintiff's Motion to Compel Production of Documents Referenced in Defendant's Privilege Log (Doc. No. 89, filed on March 5, 2001).

[7] The depositions included, but were not limited to, the depositions of Richard Brough (Doc. Nos. 71-73, filed on February 26, 2001), Harriet Golding (Doc. Nos. 74-76, filed on February 26, 2001), Jerrold Golding Levy (Doc. No. 80, filed on February 26, 2001), Clark Maxwell (Doc. No. 81, filed on February 26, 2001), Jeffrey Jardine (Doc. No. 82, filed on February 26, 2001), and Morton Schlossberg (Doc. No. 83, filed on February 26, 2001).

[8] See motions at: (Doc. No. 111, filed on May 10, 2001); (Doc. No. 112, filed on May 10, 2001); (Doc. No. 113, filed on May 15, 2001); (Doc. No. 115, filed on May 15, 2001); (Doc. No. 117, filed on May 15, 2001); (Doc. No. 119, filed on May 15, 2001); (Doc. No. 121, filed on May 15, 2001); and (Doc. No. 128, filed on May 17, 2001).

[9] For example, on December 20, 2000, there is an 11.00 hour time entry for William Cantwell's work of "[p]reparation for the deposition of Mrs. Brough; attend deposition of Mrs. Brough; conference with Mr. and Mrs. Brough regarding deposition."  (Doc. No. 299, p. 43). Also, on December 20, there is a 7.00 hour time entry for Riemenschneider's work of "[a]ttendance at document review at Brenner Real Estate; met with client; prepared for

presented in the instant case and the thorough manner in which Plaintiff's counsel addressed those

issues.  For instance, the record reflects that Plaintiff's counsel expended 59 hours from January 14,

2001 through January 21, 2001 researching, drafting, and revising Plaintiff's Motion for Summary

Judgment.[10]  (Doc. No. 275, Ex. A, p. 12).  On January 22, 2001, Plaintiff filed a Motion for Summary

Judgment on the Complaint (Doc. No. 47), a Memorandum of Law in support (Doc. No. 48), a Motion

for Summary Judgment on Defendant's Amended Counterclaim (Doc. No. 49), and a Memorandum of

Law in support (Doc. No. 50).

    Plaintiff's Memorandum of Law in support of his Motion for Judgment on the Complaint is

fifteen pages in length.  In the memorandum, Plaintiff argues that Defendant was bound by

employment agreements based on Golding's express or apparent authority or based on Defendant's

ratification of the agreements, that the employment agreements were valid and binding contracts, and

that Defendant unlawfully repudiated the employment agreements.  (Doc. No. 48, pp. 4-14).  Plaintiff's

Memorandum of Law in support of his Motion for Summary Judgment on Defendant's Amended

Counterclaim and Defenses is also fifteen pages in length.  In the memorandum, Plaintiff argues that

summary judgment should be granted as to Count I of Defendant's Amended Counterclaim because

Defendant failed to state a cause of action and there was no evidence of retaliation, that summary

judgment should be granted as to Count III because Defendant failed to state a cause of action and

there was no evidence of retaliation, that summary judgment should be granted as to Count IV because

---

depositions."  (*Id.* at 44).  It is not unreasonable for two attorneys from a firm to prepare for a
deposition, especially in a case such as this, in which there are many documents and events over
a period of time and there are claims of fraud and conspiracy.

    [10] The Court's calculation is based on time entries from January 14, 2001 through the
January 21, 2001 4.50 hour time entry for "[f]inalize motion for summary judgment and
memorandum of law in support of summary judgment based on plaintiffs [sic] complaint."
(Doc. No. 275, Ex A, p. 12).

there was no legal basis for a private cause of action, there was no evidence that Plaintiff violated the statutes and rules cited, there was no evidence of damages, and Count IV was barred by the economic loss rule.  (Doc. No. 50, pp. 2-12).  Finally, Plaintiff claimed that Counts I, III, and IV of the amended counterclaim were based in part on the claim that Plaintiff and Golding allegedly created the two employment agreements while the record reflected that there was no evidence of fabrication.  (*Id.* at 12-13).

The Court has examined these memoranda in light of the 59 hours that Plaintiff's counsel expended on researching, writing, and revising the briefs.  Given the length of the briefs and the amount of research and analysis, the time expended by Plaintiff's counsel is reasonable.

Other time entries demonstrate that Plaintiff's counsel made a good faith effort to analyze and address difficult issues in a timely and cost effective manner.  Plaintiff's attorneys expended 68.67 hours from July 25 through August 2 in responding to Defendant's Amended Motion for a New Trial filed on July 10, 2001 (Doc. No. 207).  On August 2, 2001, Plaintiff filed a twenty-two page brief with the Court responding to Defendant's Amended Motion for a New Trial.  (Doc. No. 244).  Plaintiff argued that the Court made no comment that constituted reversible error, that judgment as a matter of law in favor of Plaintiff was proper, that the net worth of Defendant's holdings was relevant to Plaintiff's case, that Defendant's exhibit 157G was properly excluded because of Defendant's discovery violation, that amendment of the pleadings to conform to the evidence was proper, that the Court did not commit error by permitting Bert Freehof to testify, that Mr. Mrachek made no reference to Defendant's failure to provide an expert, that the instructions to the jury were correct statements of the law, that Defendant's assertion that the Court committed errors was incorrect, and that Leslie Morris' testimony was properly permitted to rebut Defendant's charge of fabrication.  (*Id.* at 2-20).

Plaintiff's brief addresses a number of complicated issues, and the amount of time expended to analyze these issues is not inflated given this complexity.

The Court has reviewed each entry and corresponding objection on the chart.  The work performed by Plaintiff's counsel as reflected in the billing records is both pertinent and expected, especially given the complicated nature of the issues presented in the case, the difficult factual matters, and the severe interpersonal familial conflicts between certain parties and witnesses.  Counsel for Plaintiff has gone through the billings and reduced them for legal work for future commissions.  The narrative provided by Plaintiff's counsel for the time entries is sufficiently specific for the Court to rule on the amount of fees to be awarded in view of the deductions made.

The Magistrate Judge addressed Plaintiff's lack of specificity, possible overlap in any remaining fees that were authorized with any that might not be authorized, and an unauthorized minimum unit of billing in the remaining fees by applying a fifteen percent across the board cut to the litigation fees sought by Plaintiff.  Defendant argues that the fifteen percent reduction is improper and that exactly how the Magistrate Judge determined this percentage is unknown.  Defendant asserts that the fifteen percent cut is not based on the Eleventh Circuit's decision in this case which reversed the award on future commissions and resulted in Plaintiff recovering only nineteen percent of what the jury awarded.  Similarly, Defendant contends that the fifteen percent cut is not based on the fact that Plaintiff recovered less than sixteen percent of what he demanded in his initial damages' disclosures.  Plaintiff also objects to the fifteen percent cut, claiming that such a cut is improper.  (Doc. No. 310, p. 8).

Generally, when hours are disallowed, the Court should identify those hours and explain why. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  If the record is such that the Court cannot

expeditiously engage in an hour-by-hour review, then this principle does not apply. *Id.* If, as in the instant case, the petition for fees is extensive, an hour-by-hour review is impractical and a waste of judicial resources. *Id.* An across-the-board percentage cut is appropriate "'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal citations omitted).

However, an across-the-board percentage cut has been criticized when employed in instances where the fee application involved substantial amounts of money and where the district court failed adequately to articulate its reasons for selecting a percentage. *Id.* (internal citations omitted). For example, in *Heiar v. Crawford County, Wis*, 746 F.2d 1190, 1203 (7th Cir. 1984), the Seventh Circuit explained that when the request for fees is large, in that case more than $50,000, the district court must do more than eyeball the request and reduce it if it seems excessive. The district court is required to make a judgment, considering the nature and details of the case, regarding what the case should have cost the party. *Id.* The Eleventh Circuit has stated that the percentage reduction approach does not relieve district courts of the "requirement to concisely but clearly articulate their reasons for selecting specific percentage reductions." *Loranger*, 10 F.3d at 783.

Here, the Magistrate Judge's selection of the fifteen percent is appropriate based on the record. While Plaintiff's counsel used 0.25 hours as a minimum billing unit, the Magistrate Judge considered a 0.10 unit to be more appropriate. The minimum billing unit used, 0.25 hours or 15 minutes, less than the minimum billing unit found to be appropriate, 0.10 hours or 6 minutes, is 9 minutes, the overage. [11]

---

[11] Other district courts have reduced fee awards due to the attorney's practice of rounding off time entries to the nearest quarter hour. *See, e.g., Glover v. Heart of America Management Co.*, 1999 WL 450895 at *7 (D.Kan. May 5, 1999); *Fox Valley Laborers Fringe Benefits Fund v. Pride of the Fox Masonry*, 1996 WL 263229 at *1 (N.D. Ill. May 14, 1996); *Miller v. Bowen*, 639 F.Supp. 832, 836 (E.D. N.C. 1986).

Nine minutes is fifteen percent of an hour. While there are five entries reflecting 0.25 hours of

attorney time,[12] the improper minimum billing unit ultimately underlies each entry in the Detail Fee

Transaction File List. For instance, an entry that is 1.00 hours may contain excess time due to the fact

that Plaintiff's counsel utilized the minimum billing unit of 0.25 hours. Therefore, reducing the time

entries by fifteen percent, after elimination of fees incident to future commissions, based on the use of

an improper minimum billing unit is reasonable.

Further, Plaintiff's counsel failed to separate the time spent on pursuing accrued versus

unaccrued commissions. The jury awarded Plaintiff $208,560 for future salary, benefits, and vehicle

allowances. Plaintiff bases his right to recover attorneys' fees on Florida Statutes, section 448.08.

While section 448.08 allows the prevailing party in an action for unpaid wages to recover attorney's

fees, that section does not apply in an action for breach of an employment contract where the damages

are unaccrued wages.[13] *Joseph v. Commonwealth Land Title Ins. Co.*, 707 So.2d 376, 377 (Fla. 5th

---

[12] There are a total of five entries that use 0.25 as a billing unit, the lowest billing unit reflected on the document. On May 17, 2000, there is an entry of 0.25 hours for "[r]eceived and reviewed motion for extension of time." (Doc. No. 275, Ex. A, p. 7). On June 16, 2000, there is an entry of 0.25 hours for "[r]eceived and reviewed disclosures required of Imperial Sterling." (*Id.*) On November 7, 2000, there is an entry of 0.25 hours for "[r]eceived and reviewed correspondence from Ms. Brewer regarding Mr. Maxwell; received and reviewed court docket; received and reviewed notices of taking deposition." (*Id.* at 8). On September 11, 2001, there is an entry of 0.25 hours for "[r]eceived and reviewed notice of filing bond; received and reviewed memorandum of law from Imperial Sterling, Ltd." (*Id.* at 22). On December 27, 2001, there is an entry of 0.25 hours for "[r]eceived and reviewed motion to extend time to respond to brief filed by Imperial." (*Id.* at 23).

[13] While *Joseph v. Commonwealth Land Title Ins. Co.*, 707 So.2d 376 (Fla. 5th DCA 1998), is a decision of a Florida appellate court, not a Florida Supreme Court decision, the reasoning of the Fifth District Court of Appeal is persuasive. The Fifth District Court of appeal noted that section 448.08 does not define the term "unpaid wages," but that it had previously found in *Wertherman v. School Board of Seminole County*, 599 So.2d 220 (Fla. 5th DCA 1992), that pay for attorneys in an action involved accrued, unpaid wages. 707 So.2d at 377. The Florida Supreme Court approved *Wertherman* in *Dade County v. Pena*, 664 So.2d 959, 960 (Fla. 1995).

DCA 1998) ("[w]e reverse based on our determination that section 448.08, which allows a court to award attorney's fees to the prevailing party in an action for unpaid wages, applies to actions to recover accrued but unpaid wages, and does not apply in an action for breach of an employment contract where the damages are unaccrued wages.).

Plaintiff's counsel is unable to receive an attorneys' fees award for time spent litigating the issue of unaccrued commissions.  However, after eliminating time spent on the issue of future commissions, it would be difficult to separate time spent by counsel on the issue of accrued wages from time spent on the issue of unaccrued wages.  These two issues were inextricably intertwined in the context of this litigation.  However, having considered the case, including the trial, the emphasis placed on the unaccrued wages as opposed to the accrued wages is about fifteen percent of the sum.  Thus, the fifteen percent cut is also appropriate on this basis.

 Defendant argues that even if the Court finds that the fifteen percent reduction is appropriate, the Magistrate Judge failed to deduct the percentage from the entirety of Plaintiff's request and only deducted from the disputed portion.  Defendant's argument is without merit.  It is nonsensical for the Court to apply the deduction to the fees that counsel have agreed upon.

As for Defendant's argument that Plaintiff failed to meet his burden of proof, the Court finds that the time entries are sufficiently detailed to meet his burden.  The reality of practice is that attorneys spend their time protecting their client's interests by filing motions, conducting discovery, taking depositions, planning trial strategy, and conducting trial.  Given these realities, Defendant's objections to the time entries are not meritorious.  Defendant essentially expects Plaintiff's counsel to create lengthy, extensive, and detailed journal entries regarding the work performed in this case and with minute divisions of work noted on each issue.  Time sheets are not required to be in this

exhaustive detail.  Otherwise, counsel would spend time filling out time sheets, creating even more

fees and expenses for the client, and this would increase the cost of the litigation to the client, as well

as the time counsel would have to devote to protecting a client's interests in the case.  Another attorney

could have arguably spent less time litigating the issues presented in this case, but the result may not

have been as favorable.

The Court has relied on the affidavits and detailed time records submitted by the parties, its

observation of the pretrial proceedings and trial, and its own knowledge of the protracted and time-

consuming nature of the litigation.  *See, e.g., Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387,

1389 (11th Cir. 1997) (explaining that the district court appropriately relied on the appellees'

submission of affidavits and time records and on its own knowledge of the time-consuming nature of

the discovery dispute.)  There was an overlap in discovery and court proceedings in this case between

the claim for future commissions and unaccrued wages and the claim for breach of the employment

agreement for accrued wages.  Defendant claimed that the employment agreement was fraudulent and

that Ms. Golding had no authority to enter into it on behalf of Defendant.  To prevail on the claim for

accrued as well as unaccrued wages, Plaintiff had to respond to Defendant's counterclaims and

affirmative defenses.  Thus the claims and counterclaims arose from the same set of facts, and the

witnesses in main would be the same.  *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1176 (11th

Cir. 2002) ("[b]oth the counterclaims and [Imperial's] defense of the breach of contract relied

primarily on the theory that there never was a genuine commission agreement and that the handwritten

contracts were fabrications made by Brough and Golding after Golding's dispute with Levy.").

Furthermore, in order for Plaintiff to prevail on his breach of contract claim, he had to respond to

Defendant's arguments that the contracts were false and fraudulent, that he breached his fiduciary duty

to Defendant by representing that the contracts were valid, and that he and Golding conspired to deceive Defendant.  While Defendant argues that Count IV of its counterclaim is completely unrelated to the employment agreement because it is based on Plaintiff's alleged breach of the Florida Administrative Code, such count is also based on Plaintiff's alleged willful and fraudulent acts of deceiving Defendant in his misrepresentation that he had a written contract with Defendant.  (Doc. No. 21, Count IV, ¶52(D)).  Therefore, Plaintiff's defense of the counterclaims was inextricably intertwined with his breach of contract claim.

As noted earlier, this case was particularly contentious because Defendant, perhaps fueled by the feud between Jerrold Levy's mother, Harriet Golding, and Mr. Levy, adopted a "take no prisoners" posture towards the litigation.  Defendant was well funded, and the litigation was particularly adversarial.  Additionally, Mr. Brough was an outsider who was not related to Mr. Levy or Ms. Golding but who had been hired by the latter when she ran the Defendant.  Mr. Brough had a difficult time litigating the issues in the case when caught in the crossfire of his well funded opponent and the acrimony of the relationship between the son and mother.[14]  Mr. Brough was not shown to be as well funded or financially able to undertake the litigation "war" in which Defendant engaged.  The Court is mindful that attorneys such as Mr. Riemenschenider who take cases despite the risk that their client may not prevail and may not be able to pay the litigation fees for the representation should not be penalized for legitimate fees which reflect the wholehearted commitment to the client in the face of undeniably onerous litigation.  The overlap in the facts[15] and the issues coupled with the difficulty of

---

[14] Mr. Levy fired his mother from her position with the corporation when he took over the operation of Defendant.  Ms. Golding and Mr. Levy were also engaged in litigation in the Southern District of Florida at the same time the instant case was occurring.

[15] For instance, to prevail on his employment agreement claim, Mr. Brough had to show what he did for Defendant which included locating real estate investments for which he also

the litigation warrant the award of fees less the fifteen percent reduction.

Plaintiff's Renewed Affidavit as to Attorneys' Fees explains that multiple deductions for unallowed issues were made based on the decision of the Eleventh Circuit.  Plaintiff has explained the nature of the deductions taken.  (*See* Doc. No. 310, p. 11 n. 2).  The deductions set forth on page 2 of the Renewed Affidavit were arrived after counsel made deductions for time entries on August 30, 2000,[16] September 21, 2000,[17] October 3, 2000,[18] October 6, 2000,[19] October 11, 2000,[20] November 7, 2000,[21] January 26, 2001,[22] February 19, 2001,[23] February 20, 2001,[24] March 19, 2001,[25] June 5,

---

sought the disallowed commissions.

[16] On August 30, 2000, there is a 1.00 hour time entry for "[p]reparation for telephone conference with client; attended telephone conference with client; took steps to retain expert." (Doc. No. 275, Ex. A, pp. 7-8).

[17] On September 21, 2000, there is a 0.50 hour time entry for "[m]eeting with Mr. Riemenschneider and Mr. Leichtenberg regarding: appraisals."  (Doc. No. 275, Ex. A, p. 8). There is also a 3.00 hour time entry on that date for "[p]reparation for meeting; met with appraiser; [d]ocument review of file regarding properties."  (*Id.*)

[18] On October 3, 2000, there is a 5.00 hour time entry for "[f]ile review in preparation for meetings; met with Mr. Brough; met with witnesses and expert."  (Doc. No. 275, Ex. A, p. 8).

[19] On October 6, 2000, there is a 4.00 hour time entry for "[d]ocument review of appraisal; research for deposition; attended deposition; met with client afterward; research regarding issues raised; document drafted correspondence to our expert; document review of exhibits produced."  (Doc. No. 275, Ex. A, p. 8).

[20] On October 11, 2000, there is a 2.50 hour time entry for "[r]esearch for and document drafted answer to counterclaim, telephone conference with appraiser regarding former appraisals."  (Doc. No. 275, Ex. A, p. 8).

[21] On November 7, 2000, there are four time entries.  The first time entry is for 0.25 hours for "[r]eceived and reviewed correspondence from Ms. Brewer regarding Mr. Maxwell; received and reviewed court docket; received and reviewed notices of taking depositions."  (Doc. No. 275, Ex. A, p. 8).  There is a 2.50 hour time entry on that date for "[d]ocument review of expert reports; document drafted subpoena duces tecum; preparation for meeting with client; received and reviewed correspondence from Ms. Brewer regarding testimony."  (*Id.*)  There is a 1.00 hour time entry on that date for "[r]eceived and reviewed memo regarding Ms. Golding's lawyer; received and reviewed correspondences regarding appraisal; received and reviewed correspondence regarding Mr. Fagan; document drafting letter to Ms. Brewer."  (*Id.*)  There is

-23-

2001,[26] June 7, 2001,[27] June 16, 2001,[28] July 9, 2001,[29] August 3, 2001,[30] August 29, 2001,[31] July 12

also a 2.00 hour time entry on that date for "[r]eceived and reviewed notice of taking deposition; received and reviewed motion to strike memorandum; document drafting correspondence to Ms. Brewer on the motion to strike; received and reviewed fourth request to produce." (*Id.*)

[22] On January 26, 2001, there is a 1.00 hour time entry for "[c]onference with Mr. Riemenschneider and Mr. Leichtenburg regarding Brenner Property information and listings." (Doc. No. 275, Ex. A, p. 12). There is a 2.00 hour time entry on that date for "[p]reparation for meeting; met with appraiser regarding documents produced by Mr. Brenner." (*Id.*)

[23] On February 19, 2001, there is a 3.50 hour time entry for "[t]elephone conference with Mr. Riemenschneider and Mr. Brough regarding Defendant's request to extend deadline; conference with Mr. Riemenschneider regarding deposition of Mr. Leichtenberg; review of Mr. Scholssberg's deposition and Plaintiff's documents in preparation for deposition of Mr. Leichtenberg; telephone conference with Mr. Riemenschneider and Mr. Rose regarding documents and deposition of Mr. Leichtenberg; meeting with Mr. Riemenschneider and Mr. Leichtenberg in preparation for deposition." (Doc. No. 275, Ex. A, p. 13). On that same date, there is a 3.00 hour time entry for "[t]elephone conference with Mr. Rose; telephone conference with Mr. Brough; received and reviewed memo regarding Rosenbaum's request; document drafting correspondence to Mr. Rosenbaum; met with Mr. Leichtenberg regarding preparation for deposition." (*Id.*)

[24] On February 20, 2001, there are three time entries. The first entry is for 2.75 hours for "[l]etter to Mr. Brenner regarding withheld documents; prepare for deposition of Clark Maxwell; attend deposition of Clark Maxwell." (Doc. No. 275, Ex. A, p. 13). The second entry is for 6.00 hours for "[p]reparation for and attend deposition of expert; met with expert and client at length regarding testimony." (*Id.*) The third entry is for 2.75 hours for "[r]eceipt and review of letters from Ms. Brewer regarding Bert Freehof deposition; begin preparation of response to Defendant's motion to extend." (*Id.*)

[25] On March 19, 2001, there are two entries. The first entry is for 5.00 hours for "[c]ontinue drafting jury instructions; legal research for case law in support of jury instructions; draft motion to strike experts and memorandum of law in support of motion to strike experts; letter to Ms. Brewer regarding submission of pretrial information; receipt and review of letter from Ms. Brewer regarding her unavailability." (Doc. No. 275, Ex. A, pp. 14-15). The second entry is for 3.00 hours for "[d]ocument drafting changes to objections and jury instructions; research for same; met with expert." (*Id.* at 15).

[26] On June 5, 2001, there are two time entries. The first time entry is for 8.00 hours for "[t]rial preparation; prepare research notebook." (Doc. No. 275, Ex. A, p. 19). The second time entry is for 11.67 hours for "[p]reparation for meeting with expert; met at length with expert; went through all facets of testimony and possible cross-examination." (*Id.*)

[27] On June 7, 2001, there is a 9.00 hour time entry for "[r]eview of all appraisals in preparation for trial; legal research for issues at trial; telephone conference with Mr. Rose

-24-

through August 2, 2001,[32] and September 5, 2001.[33] (*Id.*) Furthermore, Plaintiff's counsel deducted 10 hours of trial time to account for time spent solely on the issue of future commissions by examining argument and testimony in the record at: "6/18/01, R 801, p. 177 through R 809, p. 185; 6/18/01, R 816, p. 193 through R 823, p. 200; 6/19/01, R 1204, p. 327 through R 1221, p. 345; 6/20/01, R1394 through R 1448." (Doc. No. 310, p. 11 n. 3). From the Court's review of these time entries, it is clear that the reductions made by Plaintiff's counsel are based on the time that he expended solely on the issue of future commissions.[34]

The Court finds on *de novo* review that overall the time expended by Plaintiff's counsel is reasonable, given the particular complexities presented in this case, from a review of the time records,

---

regarding trial issues; receipt and review of order on defendant's motion in limine regarding forensic expert and striking various filings." (Doc. No. 275, Ex. A, p. 19). On June 7, 2001, there is an 11.00 hour time entry for "[p]reparation for trial; outlining depositions; writing opening; research on issues upcoming at trial." (*Id.*)

[28] On June 16, 2001, there is a 7.00 hour time entry for "[p]repared jury instructions; research for same; telephone conference with Mr. Mrachek; revised instructions; met with Mr. Leichtenberg." (Doc. No. 275, Ex. A, p. 20).

[29] On July 9, 2001, there is an 8.00 hour time entry for "[r]esearch for and document drafting motion and memorandum for attorney's fees; document drafting affidavit and bill of costs." (Doc. No. 275, Ex. A, p. 20).

[30] On August 3, 2001, there is a 3.25 hour time entry for "[r]esearch regarding attorneys affidavit; met with expert regarding legal fees." (Doc. No. 275, Ex. A, p. 21).

[31] On August 29, 2001, there is a 2.00 hour time entry for "[r]eceived and reviewed order on pending motions; telephone conference with Mr. Rose regarding attorneys fees; research regarding effect of order on fees." (Doc. No. 275, Ex. A, p. 21).

[32] The entries from July 12, 2001 through August 2, 2001 relate to Plaintiff's response to Defendant's Motion for a New Trial. (Doc. No. 275, Ex. A, pp. 20-21).

[33] On September 5, 2001, there is a 0.30 hour time entry for "[t]elephone conference with Mr. Rose regarding defendant's appeal." (Doc. No. 275, Ex. A, p. 21).

[34]For instance, time spent deposing Lichtenberg would not be compensable because such time was related solely to the issue of future commissions.

the Court's extensive review of the entries on the Detail Fee Transaction File List and the chart and its

knowledge of the proceedings, and Mr. Riemenschneider's exceptional result in representing his client

in a difficult case.  Further, the time entries are sufficiently detailed to give notice as to the work

performed.  Plaintiff has reduced his attorneys' fees to eliminate excessive charges or unauthorized

fees for future commissions.  However, the application of the fifteen percent reduction to the

remaining fees is appropriate on the grounds that the record does not reflect deduction for work on

unaccrued wages and in order to reduce the inflated minimum billing unit utilized by counsel.

### 3. Plaintiff's Argument that the Magistrate Judge Improperly Calculated the Fifteen Percent Reduction

Plaintiff claims that the Magistrate Judge erred in calculating the fifteen percent reduction,

arguing that $12,213.63 was deducted from the amount sought based on counsel's analysis that this

amount dealt solely with the pursuit of future commissions.  Plaintiff contends that the Magistrate

Judge failed to consider these deductions when she reduced the attorneys' fees by fifteen percent.

Plaintiff urges the Court to add back the $12,213.63 to the litigation fee total and then apply the fifteen

percent reduction.

The Magistrate Judge based the reduction on a number of different factors, including utilization

by Plaintiff's counsel of an improper minimum billing unit, the vague nature of some of the time

entries, and the possibility of overlap between compensable and non-compensable fees.  Because there

are multiple grounds for the fifteen percent reduction, there is no error in its calculation.

### 4. Defendant's Argument that Plaintiff is not Entitled to Recover Attorneys' Fees for Time Spent Determining the Amount of Fees

The Magistrate Judge found that all work preparing motions for attorneys' fees and requests for

costs prior to September 26, 2003 was directed to the issue of entitlement as well as to the amount to

be awarded and recommended that Defendant's objections regarding Plaintiff's attorneys' fees and bill

of costs for work performed on or before September 26, 2003 be overruled.

Defendant objects to time that Plaintiff's attorneys spent preparing a bill of costs and a motion for an award of attorneys' fees.[35]  Defendant argues that Plaintiff is not entitled to recover fees spent determining the amount of attorneys' fees that a party is to receive.  Rather, Defendant contends that Plaintiff may only pursue fees relating to entitlement.  Defendant cites *Oruga Corp., Inc. v. AT&T Wireless of Florida, Inc.*, 712 So.2d 1141 (Fla. 3d DCA 1998), in support of its argument.

In *Orgua Corp.*, the Third District Court of Appeal addressed the issue of whether the defendant could recover fees incurred in litigating the amount of fees under Florida Statutes section 768.79(6)(a).  *Id.* at 1145.  Section 768.79(6)(a) states that "the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served."  The Third District held that while the defendant was entitled to recover fees relating to the defendant's entitlement to the fees, the defendant was not entitled to fees related to litigating the amount of fees to which the defendant claimed it was entitled.  *Id.*  The Third District based its holding on *State Farm Fire & Cas Co. v. Palma*, 629 So.2d 830 (Fla. 1993), a Supreme Court of Florida case.

In *Palma*, the Florida Supreme Court held that attorneys' fees may properly be awarded under section 627.428 for litigating the issue of entitlement to attorneys' fees, but that attorneys' fees may not be awarded for litigating the amount of fees,[36] reasoning that the purpose of the statute is to

---

[35]  On page 128 of the chart, Defendant objects to time that Plaintiff's counsel spent drafting a bill of costs.  However, Defendant's objections to the Magistrate Judge's Report and Recommendation address the time that Plaintiff's counsel expended in determining the amount of fees to which Plaintiff is entitled.

[36]  Section 627.428(1) states: "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of

discourage insurance companies from contesting valid claims.  *Id.* at 833.  If the scope of the statute is to be expanded to include fees incurred in litigating the amount of fees to which a party is entitled, such an expansion should be accomplished by the legislature rather than by the courts.  *Id.*  The Florida Supreme Court further reasoned that hours expended on litigating the amount of fees inures solely to the attorneys' benefit and cannot be considered services rendered in procuring full payment of the judgment.  *Id.*  The court recognized, however, that federal courts generally do not distinguish between entitlement to attorneys' fees and the amount of attorneys' fees and permit fees for the entire time spent on an issue because such fee awards encourage attorneys to represent indigent clients.  *Id.*

   Plaintiff's entitlement to attorneys' fees is based on Florida Statutes section 448.08.  (*See* Doc. No. 272, ¶2).  Section 448.08 states that the "court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee."  FLA. STAT. § 448.08 (2002).  The Court has independently researched this issue and discovered a split among the Florida district courts of appeal on the issue of whether under section 448.08 attorneys' fees incurred in litigating the amount of fees that a party is entitled to may be recovered.[37]  In *Diaz v. Santa Fe HealthCare, Inc.*, 642 So.2d 765, 766 (Fla. 1st DCA 1994), the First District Court of Appeal held that the trial court has discretion, in an appropriate case, to make a fee award under section 448.08 which encompasses time spent establishing the amount of the fee.  The First District distinguished that case from *Palma*, reasoning that one apparent purpose of section 448.08 is to encourage attorneys to represent indigent

_____

an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."  FLA. STAT.§627.428(a).

   [37]The Court's independent research has not produced a Florida Supreme Court case addressing the issue of whether Plaintiff may recover fees for hours expended on litigating the issue of the amount as opposed to the entitlement to attorneys' fees under section 448.08.

-28-

persons in disputes for unpaid wages.  *Id.*  However, other appellate courts in Florida have found that fees are not awardable for establishing the amount of the fee under section 448.08.  *See, e.g., Mediplex Const. of Florida, Inc. v. Schaub*, 856 So.2d 13, 14 (Fla. 4th DCA 2003) ("[w]e also disagree with the [plaintiffs'] contention that *Palma* is limited to section 627.428(1)"); *National Portland Cement Co. v. Goudie*, 718 So.2d 274, 276 (Fla. 2d DCA 1998) ("[plaintiff] is entitled to include the number of hours devoted to establishing the right to a fee, but not to the amount").

Plaintiff concedes that attorneys' fees incurred solely on the issue of the amount of fees awardable may not be recoverable.  (Doc. No. 310, p. 9).  Given the plain language of section 448.08 and the Florida Supreme Court's decision in *Palma*, the Court finds that Plaintiff may recover fees only for hours expended litigating the issue of entitlement to the fees but not fees for hours expended litigating the issue of the amount of fees recoverable.  Therefore, the Magistrate Judge erred in awarding fees relating both to entitlement and amount.

The contested time entries are July 9 and 10, 2001.  Plaintiff spent six hours on July 9, 2001 for "[r]esearch for and document drafting motion and memorandum for attorney's fees; document drafting affidavit and bill of costs."  (Doc. No. 299, p. 128).  Plaintiff spent six hours on July 10, 2001 for "[c]ontinued preparation of motion for fees; research in preparation for responding to motions."  On July 11, 2001, Plaintiff filed a Motion for Attorneys' Fees and Costs (Doc. No. 208) and a memorandum of law in support of the motion (Doc. No. 209).  The memorandum is seven pages in length.  Plaintiff argues that he is entitled to an award of attorneys' fees pursuant to section 448.08 and that Plaintiff's defense to Defendant's counterclaims and defenses are inextricably interwoven with Plaintiff's complaint.  Plaintiff also filed the affidavit of Mr. Riemenschneider in support of his Motion for Attorneys' Fees and Costs.  (Doc. No. 211).  The affidavit explained why the fees were reasonable

and also contained a seventeen page Detail Fee Transaction File List.

The time spent by Plaintiff's counsel on July 9, 2001 was partially dedicated to determining the amount of fees to which Plaintiff was entitled.  Plaintiff's motion and memorandum are solely dedicated to the issue of entitlement.  The affidavit is solely dedicated to the amount to which Plaintiff is entitled under section 448.08.  The affidavit is not complicated.  Furthermore, the Detail Fee Transaction File List is nothing more than a time sheet containing explanations of time entries that Plaintiff's counsel compiled throughout this case.  However, Plaintiff's counsel failed to delineate specific time entries for the preparation of the motion and memorandum and for the drafting of the affidavit.  Rather, Plaintiff's counsel lists six hours for all of the tasks.  Because the record does not reflect the amount of time that was spent on the issue of the amount of fees, the Court deducts three (3) hours of time or $600 from the overall fee award for the time spent on the issue of the amount of attorneys' fees.

### 5. Defendant's Argument that the Magistrate Judge Erred by Awarding Time for Non-Legal Work

Defendant argues that the Magistrate Judge, without an explanation, found it reasonable for a lawyer to prepare for meetings with staff and to bill time for giving instructions to staff during those meetings.  For example, Defendant takes issue with the April 3, 2001 three hour time entry for "[m]et with staff to prepare for trial; research for trial brief."  (Doc. No. 299, p. 86).

Because time spent by lawyers conferring on strategy, instructing staff, and coordinating work among attorneys and paralegals is compensable, the Court overrules Defendant's objection.  *National Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982) ("[i]t was well within the District Court's discretion to allow this time on the theory that attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is

managed in an effective as well as efficient manner"); *Scelta v. Delicatessen Support Servs., Inc.*, 203 F.Supp. 2d 1328, 1333 (M.D. Fla. 2002) ("time spent by lawyers conferring may be compensable").

### 6. Defendant's Argument that Plaintiff Failed to Submit an Affidavit in Support of the Reasonableness of Fees on Appeal

Defendant argues that Plaintiff merely resubmitted the Fallace Affidavit in support of his Renewed Motion for Attorneys' Fees which failed to analyze the reasonableness of fees on appeal.

While the Fallace affidavit does not opine as to the reasonableness of Plaintiff's appellate fees, Plaintiff's failure to file an affidavit in support of the reasonableness of his appellate attorneys' fees does not mean that Plaintiff is not entitled to such fees. Because the Court has expertise on the question of attorneys' fees and may consider its own knowledge and experience concerning a reasonable and proper fee award by forming an independent judgment with or without the aid of witnesses, the Court finds that Defendant's argument is without merit. *Norman*, 836 F.2d at 1303 (internal citations omitted).

Defendant also argues that the Fallace affidavit fails to account for the Eleventh Circuit's specific provision that Plaintiff could only recover appellate attorneys' fees incurred in successfully defending the $406,000 award for the unpaid commission. However, the Magistrate Judge found that Plaintiff had already applied more than a 25 percent reduction to the appellate attorneys' fees incurred and found such an amount to be reasonable. (Doc. No. 308, p.13). Therefore, the fact that Fallace did not opine as to the reasonableness of appellate attorneys' fees incurred in successfully defending the $406,000 award for the unpaid commission has no effect.

### 7. Defendant's Argument that Plaintiff Failed to Meet His Burden of Proof on Appellate Attorneys' Fees

Plaintiff seeks $23,063 in appellate attorneys' fees. The Eleventh Circuit determined that

Plaintiff was entitled to appellate attorneys' fees incurred in successfully defending the $406,000

award for the unpaid commission.  (Doc. No. 287, filed on April 4, 2003, Ex. A).  Plaintiff stated that

he withdrew 25 percent of his attorneys' fees on appeal.  (Doc. No. 299, p. 167).  Plaintiff

approximated that 25 percent of his attorneys' time was expended on the issue of future commissions

and was not recoverable.  (*Id.*)

The Magistrate Judge found that the attorneys' time entries were too general for her to make a

reasoned judgment regarding time that was devoted to the issue of unpaid commissions.  Considering

the number of issues raised on the appeal, the Magistrate Judge found that Plaintiff's offer to reduce

the request for attorneys' fees incurred by more than 25 percent was reasonable.  (*See* Doc. No. 308, p.

13).

Defendant contends that this reduction is too low, claiming that most of the time spent on the

appeal was related to issues other than upholding the jury's verdict on unpaid commissions.  Defendant

further argues that Plaintiff failed to demonstrate his entitlement to attorneys' fees by providing the

briefs filed in the Eleventh Circuit.  Defendant surmises that the Magistrate Judge chose to trust

Plaintiff's 25 percent "guesstimate" rather than evaluate Plaintiff's hours based on the facts.

The Court has independently obtained a copy of the briefs filed in the Eleventh Circuit.[38]

Defendant's initial brief raised eight separate arguments: 1) the Court erred in denying its motion for

judgment as a matter of law and permitting the issue of unearned future commissions to go to the jury;

2) Plaintiff's failure to present evidence of the present value of his claim for future damages and the

jury's failure to reduce damages to present value was error; 3) the trial court committed reversible

---

[38] It is well established that "'[f]ederal courts may take judicial notice of proceedings in other courts of record.'" *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (internal citations omitted).

error when it permitted evidence of Defendant's wealth and net worth to go to the jury; 4) the Court's comments in the presence of the jury constitute reversible error; 5) the Court erred in granting Plaintiff and Counter-Defendant Golding's motions for judgment as a matter of law on Defendant's claims of fraud and conspiracy to commit fraud; 6) the ruling to permit Plaintiff to call Bert Freehof to testify as a rebuttal witness after the close of Defendant's case and after Defendant had already made a motion for judgment as a matter of law was error; 7) the comments in closing argument of Plaintiff's attorney constitute reversible error; and 8) the cumulative effect of the errors deprived Defendant of substantial rights and a fair trial.

In his answer brief, Plaintiff responded to the first seven arguments. Plaintiff's brief contains 58 pages of substantive argument. Thirteen pages of his brief were dedicated to responding to Defendant's argument that the Court erred in denying Defendant's motion for judgment as a matter of law and permitting the issue of unearned future commissions to go to the jury. Plaintiff also dedicated three pages of his brief to addressing Defendant's argument that Plaintiff's failure to present evidence of the present value of his claim for future damages and the jury's failure to reduce damages to present value was error. According to the Eleventh Circuit's decision, Plaintiff is not entitled to attorneys' fees incurred in addressing these issues, because they are unrelated to Plaintiff's defense of the jury's award of $406,000 for the unpaid commission. Approximately 27.5 percent of the substantive portion of Plaintiff's brief was dedicated to issues unrelated to the jury's award of $406,000.

Plaintiff is entitled to attorneys' fees in addressing Defendant's other arguments which directly attacked the integrity of the $406,000 award, as Defendant requested a new trial for the other alleged errors committed by the Court during the trial phase of this case. Thus, Plaintiff's attorneys necessarily expended time on these issues in order to protect the $406,000 award.

-33-

Even more importantly, the fact that Plaintiff's counsel did not separate the hours expended defending the award for unaccrued wages versus the hours expended defending the award for accrued wages at the appellate stage of this case does not affect the outcome on the appellate fees issue. Plaintiff's counsel necessarily spent time on the other issues raised by Defendant in order to protect the $406,000 award for the unpaid commission. The fact that Plaintiff's arguments also protected the award for unaccrued wages has no effect because Plaintiff's counsel already deducted $13,026 in fees based on the decision of the Eleventh Circuit.

As previously noted, the Magistrate Judge found that Plaintiff actually deducted more than twenty-five percent from the appellate attorneys' fees total to take into account time spent on issues unrelated to defending the $406,000 award for the unpaid commission. While 27.5 percent of Plaintiff's brief was dedicated to issues unrelated to the $406,000 award, Plaintiff has already deducted more than that amount from his appellate attorneys' fee total.[39] Plaintiff's counsel has also explained the basis for the deductions he made on appeal. (Doc. No. 310, p. 11 n.2). Deductions for time entries incurred during the appeal were made for time entries on December 17, 2001, December 18, 2001, December 27, 2001, July 16, 2002, July 17, 2002, July 26, 2002, July 31, 2002, and July 31, 2002 through September 27, 2002.[40] Therefore, the Court finds that the Magistrate Judge did not err in

---

[39] Plaintiff incurred a total of $40,809 in appellate attorneys' fees of which Plaintiff's counsel awarded a $380 credit. (Doc. No. 275, "Affidavit," p. 2). Based on the decision of the Eleventh Circuit, Plaintiff's counsel reduced the fees by $13,026.00. (*Id.*) This amount would result in an appellate attorneys' fee total of $27,403. Plaintiff is seeking $23,063 in appellate attorneys' fees. Thus, Plaintiff has reduced his fees by an additional $4,340. The total amount of reductions is $17,366 which represents a 42.95 percent reduction.

[40] On December 17, 2001, there is a 2.00 hour time entry for "[t]elephone conference with New York counsel; telephone conference with Mr. Brough; research regarding amounts owed; calculated amounts owed; file review regarding same." (Doc. No. 275, Ex. A, p. 23). On December 18, 2001, there is a 0.75 hour time entry for "[f]ile review in preparation for telephone conference with client; telephone conference with client." (*Id.*) On December 27, 2001, there is

-34-

awarding $23,063.00 in appellate attorneys' fees.

*__Renewed Motion for Costs__*

Defendant did not respond to Plaintiff's affidavit as to the costs for the Scott Brenner and Clark

Maxwell depositions.  Defendant did object to the Magistrate Judge's Report and Recommendation on

Plaintiff's Renewed Motion for Costs.  (Doc. No. 314, filed on June 25, 2004).

Based on the Court's evaluation of William Cantwell's affidavit, the Court overrules

Defendant's Objection as to the $324.85 associated with the Scott Brenner deposition because the

$324.85 was for the cost of an original transcript alone.  (Doc. No. 319, ¶4).  The Court also overrules

Defendant's Objection as to the $87.63 in "special copies" associated with the Clark Maxwell

deposition because the "special copies" were not extra copies of filed papers.[41]  (*Id.* at ¶6).

__Conclusion__

1.	The Court has reviewed *de novo* the record on consideration of the Objections of the

Defendant Imperial Sterling Limited (Doc. No. 309) to the Report and

---

a 0.25 hour time entry for "[r]eceived and reviewed motion to extend time to respond to brief
filed by Imperial."  (*Id.*)  There is also a 1.25 hour time entry on that date for "[d]ocument
review in preparation for telephone conference with opposing counsel; telephone conference
with Mr. Brough."  On July 16, 2002, there is a 1.50 hour time entry for "[l]ocate and print
appellate opinion; meeting with Mr. Riemenschneider regarding appellate opinion; legal research
regarding availability of further appeal and jurisdiction of Supreme Court of the United States."
(*Id.* at 23-24).  On July 17, 2002, there is a 5.30 hour time entry for "[r]esearch regarding issues
raised by appeal; telephone conference with client regarding appeal and steps to take."  (*Id.* at
24).  On July 26, 2002, there is a 6.60 hour time entry for "[c]ontinued drafting of brief; finalized
motion for fees and document drafted affidavit."  (*Id.*)  On July 31, 2002, there is a 5.25 hour
time entry for "[r]esearch for and document drafted petition for rehearing."  (*Id.*)  The entries
from July 31, 2002 through September 27, 2002 relate to researching and drafting a brief on a
motion for a rehearing.

[41] While both depositions may have been related to the issue of future commissions
ultimately, there is no objection that they could not lead to admissible evidence.

Recommendation of the U.S. Magistrate Judge (Doc. No. 308) with respect to the attorneys' fees awarded.

2.      The Court sustains Defendant's Objection that Plaintiff is not entitled to attorneys' fees incurred in determining the amount of attorneys' fees to which Plaintiff is entitled.  The Court reduces the amount of trial attorneys' fees by $600.

3.      Plaintiff's Objections are **OVERRULED**.  The remainder of Defendant's Objections are **OVERRULED**.  In all other aspects, the Court **AFFIRMS** and **ADOPTS** the Report and Recommendation of the U.S. Magistrate Judge (Doc. No. 308) with respect to the attorneys' fees awarded.

4.      Defendant shall pay to Plaintiff  $237,930.24 for Plaintiff's trial and appellate attorneys' fees associated with this case.[42]

5.      The Court has also reviewed *de novo* the record on consideration of the Objections of Defendant Imperial Sterling Limited (Doc. No. 314) to the Report and Recommendation of the U.S. Magistrate Judge (Doc. No. 313) with respect to the costs awarded based on the Court's review of the affidavit of William Cantwell, II.  (Doc. No. 319).

6.      The Court overrules Defendant's Objections as to the $324.85 associated with the Scott Brenner deposition and the $87.63 in "special copies" associated with the Clark

---

[42] This amount was calculated by taking the agreed amount of attorneys' fees ($62,682.80) and adding this amount to the contested amount of attorneys' fees ($179,746.40) for a total of $242,429.20.  Fifteen percent of $179,746.40 ($26,961.96) was subtracted from the $242,429.20 for a total of $215,467.24.  Six hundred dollars was then subtracted from the $215,467.24 to account for the award of fees incurred in litigating the amount of fees that Plaintiff was entitled for a total of $214,867.24.  Appellate attorneys' fees in the amount of $23,063 was added to the $214,867.24 for a total attorneys' fees award of $237,930.24.

Maxwell deposition.

7.      Defendant shall pay to Plaintiff $11,056.46 for Plaintiff's costs associated with this case.[43]

8.      The Clerk shall enter a Judgment in favor of Plaintiff and against Defendant in the amount of $248,986.70, which is the sum of attorneys' fees and costs to which Plaintiff is entitled, for which sum execution may issue.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July _29th___, 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

---

[43] The Court has reduced the amount recommended by the Magistrate Judge by $133.55 based on a previous Order.  (Doc. No. 318).

-37-